IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

JOSEPH BRADLEY CLARK, #09867                                            PLAINTIFF

V.                                                          NO. 1:12cv216-LG-JMR

RAY MILLER; MELVIN BRISOLARA;
JOHN MASSENGILL; JUSTIN BRANNING
and KENNETH MORAN                                                      DEFENDANTS

REPORT AND RECOMMENDATION

BEFORE THE COURT are the Defendants' Motions [77] for summary judgment and to

Strike [85] a response in opposition filed by the Plaintiff, Joseph Bradley Clark [Clark]. The

Court, being fully advised in the premises, and after carefully considering the pleadings filed as a

matter of record, along with the applicable law, makes the following recommendations in this

case.

STATEMENT OF THE CASE

Clark filed this *pro se* Complaint on July 9, 2012, alleging violations of his civil rights,

pursuant to 42 U.S.C. § 1983. According to the allegations of the complaint, Clark was asleep on

the ground in Long Beach, Mississippi, when two Harrison County police officers, Ray Miller

[Miller] and John Massengill [Massengill] came upon him, and caused the K-9 that was with

them to bite Clark in the face, arm and leg. [1, p. 4; 81, p. 2.] He contends that Massengill tasered

him until "I was unconscious." (*Id.*) Clark was later allowed to amend his complaint to add as

defendants Justin Branning [Branning], Kenneth Moran [Moran] and Melvin Brisolara

[Brisolara]. [35.]

According to the Defendants, Clark was the subject of a traffic stop on November 25,

2010, after he was observed on I-10 in Harrison County near Canal Road weaving in and out of

lanes, and nearly sideswiping a vehicle. [78, p. 2; 77-1, p. 1; 77-2, p. 1.] Massengill pulled over

the vehicle, and as he approached the stopped vehicle, it drove off at a high rate of speed. [77-2, p. 2.] The vehicle exited the interstate at Beatline Road, again nearly sideswiping another vehicle. (*Id*.) The vehicle collided with a tree when the driver lost control of it. [77-2, p. 2.]

Clark, identified as the driver of the vehicle, fled on foot into the woods following the accident. [77-2, p. 2.] Miller was called to the scene with his K-9, D'Ablo, to track Clark in the woods. [77-2, p. 2; 77-4, pp. 1-2.] The dog located Clark before Miller saw him, and the dog initially "engaged" Clark on the arm. [77-4, p. 2.] When Clark allegedly became combative, the dog "engaged" Clark on the leg. (*Id*.) When Miller told Clark to stop fighting the dog, the dog released Clark. (*Id*.) Clark was then handcuffed and transported to Gulfport Memorial Hospital [Memorial Hospital] for treatment of the dog bites. (*Id*.)

Branning assisted Massengill with the pursuit of the Blazer on the interstate, witnessed the truck hitting the tree, and Clark running into the woods after the accident. [77-5, p. 1.] Following Clark's apprehension, Branning verified that the vehicle had recently been reported as stolen from Biloxi, and that there were outstanding warrants for Clark in Pascagoula. [77-5, p. 2.] Branning detected a strong odor of alcohol on Clark at the scene. (*Id*.) After Clark was taken to the hospital for treatment, Branning issued several traffic citations to Clark, including leaving the scene of an accident; improper lane usage; driving under a suspended license and driving under the influence. [77-5, pp. 4-6.] Branning avers that he did not use a taser on Clark, or witness anyone tasering Clark during Clark's apprehension and arrest. [77-5, p. 2.] Branning further avers that he "only witnessed and was involved in the Plaintiff [Clark] being handcuffed once arrested." [77-5, p. 3.]

Clark was treated at Memorial Hospital for his wounds incurred when he struck a tree with his vehicle at an unknown speed and dog bites. [90, pp. 1-2.] The section labeled "back problems" was marked on the emergency department nursing record. (*Id*.) A CT scan was taken

of his head and cervical spine. [90, p. 5.] The findings were "no evidence of acute infarct, hemorrhage, mass effect or intracranial injury." (*Id*.) The brain CT scan returned normal findings. [90, p. 9.] Clinical history from radiology reports indicates "mvc, stole car, rammed into tree, bitten by a dog on the left arm, left side, rt. ankle and etoh [sic]." [90, p. 6.] Radiology reported "no evidence of acute fracture or subluxation. Cervical spondylosis and degenerative bony changes." [90, p. 7.]

According to the medical records, Clark did not report use of a taser during his medical examination at Memorial Hospital on November 25, 2010. [90, pp. 1-2.] When Clark was examined at the jail the next day, he stated was "all I know I was bitten by a dog." [77-6, p. 2.] He complained of dog bites and scratches. (*Id*.) Clark claims that the medical record from the jail dated December 2, 2010, which outlines Clark's subjective complaint to the nurse of a taser injury, supports his claim of a taser attack. [81-1.] The nurse's assessment of injury provides that Clark's injury was related to a dog bite. (*Id*.)

According to Clark, he was subjected to the excessive use of force when Miller made his dog "bite me in the face and on my left arm and right leg." [1, p. 4.] He claims that Massengill and Miller "tassed" him three times, all while Clark was allegedly not trying to resist. (*Id*.) He claims that the dog bits were "more than de mimus [sic]." [80, p. 3.] He asserts that he received stitches in his leg and that he was left with scars from the attack. (*Id*.) Although he claims he was on the ground at the time of the incident at issue, he says that "when they tased me half to death, I fell and damaged my artifical [sic] hip." (*Id*.)

Clark claims that Miller "whiped [sic] the dogs [sic] leash" which allegedly caused the dog to bite Clark's left arm. (*Id*.) The dog let go of the arm, and Miller allegedly "whiped" the leash again, causing the dog to bite Clark's right leg. (*Id*.) According to Clark, the dog continued to bite his leg until Miller told the dog to stop. (*Id*.)

3

Clark also claims that when the dog let go, Miller and Branning "poped [sic] me with their taser's [sic]." (*Id.*) Clark claims the taser was applied until he "fell unconscious to the ground, causing damage to my artificial hip. Which Dr. Raff says can not be fixed." (*Id.*) Clark also contends that the incident "cracked my already bad right elbow. Which needs surgery now. And hurt my already bad back." (*Id.*) Clark further asserts that he has a "medical dockument [sic]" to prove these claims. (*Id.*)

According to Clark, the motion for summary judgment should be denied because there is a disputed factual issue regarding whether Clark was tasered during his arrest. [80, p. 1.] Clark claims that the attached medical statement confirms that he was tasered. (*Id.*) He claims the following:

> And there was no need to tase me three times. Or to tell the dog to bit [sic] me three differnt [sic] times. It was Ray Miller. And Justin Branning was right along, beside Miller, popping me with his taser too. They acted with reckless indfference [sic] to my rights. And with ill will and a desire to injure, or malice [sic] me. There I was a 51 year old handicapped man on the ground asleep. No threat to anyone. No longer trying to flee, or resit [sic] in any way. When they put the dog on me and tased me. That is why I am sueing [sic] them all in their offical [sic] and individual capacity [sic] for deprivation of the Fourth and Eighth Amendments of the Fedral [sic] Constitution and laws of the United States.

[80, p. 1.]

Clark further asserts that "failure to report the use of tasers is evidence of deliberate indifference. [sic] And John Massengill, and Kenneth Moran violated by Forth [sic] and Eighth Amendments [sic] by failing to intervene when Miller, and Branning was [sic] using excessive force and failer [sic] to report it." [80, p. 2.] Clark indicates that Brisolara was named as a defendant because Clark claims that Harrison County has a policy of "biased investigations and a refusal to discipline staff members who use excessive force" which permits the staff to take actions "knowing that they will not be held accountable." [80, p. 2.]

Clark claims that the dog bite injuries he sustained were more than de minimus because

"the dog was sinking his teeth all the way in arm and leg. Leaving holes, they had to put some

stiches[1] [sic] in my leg." [80, p. 3.] Clark contends that "I must still suffer from fright and shock.

Because every time I go soundly to sleep I wake up in a cold sweat after seeing this dog lunging

[sic] for my face. This has really efected [sic] my quality of life. And when all this happen they

did not yet know the truck was stolen." (*Id*.)

According to Miller, D'Ablo's handler, the dog was on a leash when it was used to track

the suspect (Clark) through the wooded area with heavy brush cover after Clark fled into the

woods following the wreck of the vehicle. [77-4, pp. 2, 5.] The dog found Clark hiding under a

fallen tree. (*Id*.) Miller avers that the dog engaged Clark's lower left arm before Miller even saw

Clark. [77-4, p. 2.] Miller states that Clark was combative and began resisting arrest, pulling

away from the dog, which caused the dog to engage Clark in the lower right leg. [77-4, pp. 2, 5.]

When Miller told Clark to stop resisting and fighting the dog, Miller ordered the dog to release its

grip on Clark. (*Id*.) According to the Canine Operations policy, Harrison County Sheriff's

Department's dogs are trained to bite and hold. [77-4, p. 24.] When tracking a scent, a dog is

trained to apprehend on its own; the officer does not give a separate command to bite, and will

release its hold only on spoken command from the handler. (*Id*.)

When Clark was examined subsequent to this encounter, the nurse found that Clark

suffered "superficial dog bit abrasions" with "no drainage." [77-6, p. 1.] At the time of the

examination, Clark stated "I don't remember what happened, all I know is that I was bitten by a

dog. I haven't had a seizure in 20+ years." (*Id*.)

Clark admitted that he was running away from the officers and trying to hide from them.

[82-1, p. 5.] Clark stated that Miller had the canine, but he did not know what other officers were

---

[1]The records from the emergency room at Memorial Hospital do not reflect that stitches
were administered to Clark's wounds. [90.]

present. [82-1, pp. 1-2.] Clark named Massengill and Branning as defendants in this case because they "[p]robably had something to do with it. If they didn't they know who does." [82-1, p. 3.] Clark stated in his response to requests for admissions that "Massengill may not have assualted [sic] me." [82-2.] Clark further stated that "I have dockuments [sic] that says I was on the ground when I was found. No need to put dog on my three times, or tase me three times either, especially to a disable [sic] old man, with a tumor on his eye." (*Id*.) Clark further indicated that he has no evidence against Moran, and does not know if he had any contact with Moran. [86.]

Each defendant denied using a taser on Clark at any time during his arrest. [77-2, p. 3; 77-4, p. 2; 77-5, p. 2; 77-8, p. 2.] The defendants maintain that the vehicle driven by Clark was an immediate threat to the safety of the officers and others on the road, because it nearly collided with vehicles on the road. [77-2, pp. 1-2.] The defendants assert that any force which may have been used in engaging the dog with Clark during his apprehension was reasonable and necessary. [78, p. 11.] The defendants assert that the Harrison County Sheriff's Department Policy and Procedure with regard to Canine Operations provides that a canine handler should command the dog to use no more force than necessary to enforce the law to protect himself, the dog and others from loss of life or the threat of serious injury. [77-4, p. 23.] The canine unit consists of an officer-handler and the trained dog. [77-4, p. 20.] The defendants maintain that Clark did not suffer a serious injury causing Clark's claim of excessive force to fail as a matter of law. [78, p. 13.]

Brisolara cannot be held liable on the mere allegation that he failed to train or supervise his employees, according to the defendants. [78, p. 13.] The defendants argue that Clark does not provide any specific evidence to show how the officers were inadequately supervised or trained, or how this alleged lacked of training violated his constitutional rights. (*Id*.) In addition, the defendants assert that Brisolara cannot be held vicariously liable under a theory of respondeat

superior for the acts of his subordinates. [78, p. 18.]

The defendants maintain that they are entitled to qualified immunity for any claims advanced against them in their individual capacities. [78, p. 14.] The defendants assert that Clark has not alleged a constitutional violation in his case, and no evidence supports his claim that the defendants violated his constitutional rights. (*Id.*)

The defendants assert that any claim for emotional damages advanced by Clark in this case is barred under 42 U.S.C. § 1997e(e). [78, p. 22.] Clark's physical injury does not meet the requirement that he suffered more than a de minimus injury to trigger the recovery of emotional or mental damages. (*Id.*) The defendants also maintain that any state law claims advanced by Clark are barred under the provisions of the Mississippi Tort Claims Act [MTCA], Mississippi Code Annotated § 11-46-1, *et seq.* (*Id.*) The relevant portion, according to the defendants, provides that a governmental entity shall not be liable for the claim of "any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution regardless of whether such claimant is or is not an inmate . . . when the claim is filed." MISS. CODE ANN. § 11-46-9(1)(m). (*Id.*, p. 23.)

## STANDARD OF REVIEW

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c). "The mere existence of a factual dispute does not by itself preclude the granting of summary judgment." *St. Amant v. Benoit*, 806 F.2d 1294, 1296-7 (5th Cir. 1987). "The requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Furthermore, it is well settled in this circuit that bare allegations are insufficient to withstand summary judgment because the opposing party must counter factual

7

allegations by the moving party with specific, factual disputes. *Time Warner Cable, Inc. v. Hudson*, 667 F.3d 630, 636 (5th Cir. 2012), *cert. denied* ___ U.S. ___, 132 S.Ct. 2777.

In considering a motion for summary judgment, the court views the evidence in the light most favorable to the party resisting the motion. *Prison Legal News v. Livingston*, 683 F.3d 201, 211 (5th Cir. 2012). To avoid summary judgment, the party opposing summary judgment must "go beyond the pleadings" and bring forth evidence demonstrating the existence of a triable issue of fact. *See Anderson*, 477 U.S. at 247-8; *Whitt v. Stephens Cnty.*, 529 F.3d 278, 283 n.8 (5th Cir. 2008).

## <u>ANALYSIS</u>

Clark advances claims of excessive force against the defendants, which allegedly caused bodily harm. Clark was a pretrial detainee at the time of the incidents giving rise to this lawsuit. [1.] The Defendants advance several reasons why Clark's complaint should be dismissed on summary judgment. [78.] The Court will address these reasons below.

I.     <u>Claims Advanced Against Branning, Massengill and Moran</u>

When an individual has no personal involvement with the events that give rise to the suit, and the plaintiff provides no evidence to show that an individual participated in the alleged acts or implemented unconstitutional policies that resulted in the plaintiff's injuries, dismissal of the claims against that individual is appropriate. *Thompson v. Johnson*, 348 F. App'x 919, 921 (5th Cir. 2009); *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981). In this case, Clark has stated that he has no evidence that Moran deprived Clark of his civil rights. [88, p. 1.] Clark cannot present evidence that Moran used excessive force on Clark or had any contact with Clark on the date of the incident at issue in this suit. (*Id.*) Because evidence of personal involvement in the incident is lacking, the Court recommends that any claims against Moran whether in his individual or official capacity should be dismissed.

In addition, Clark stated that Massengill and Branning were named as defendants because they "[p]robably had something to do with it. If they didn't they know who does." [82-1, p. 3.] Clark later stated that Massengill may not have assaulted him. [82-2.] Clark must do more than allege mere presence at the scene or some knowledge of other participants on the part of Massengill and Branning to subject them to liability in this case as these claims do not allege personal involvement by these individuals in the violation of a constitutional right. *Champagne v. Jefferson Parish Sheriff's Office,* 188 F.3d 312, 314 (5th Cir. 1999); *Creamer v. Porter*, 754 F.2d 1311, 1316 (5th Cir. 1985). Clark offers no evidence that any of these officers were involved in the dog bite incident, or even if they were present at the scene, that they could have prevented the attack because the dog took commands only from its handler. *Ballard v. Hedwig Vill. Police Dep't*, 408 F. App'x 844, 845 (5th Cir. 2011). Clark has failed to present evidence that Massengill or Branning were responsible for the alleged constitutional violation in this case.

The Court, therefore, recommends that the claims advanced against Branning and Massengill, whether in their individual or official capacities, in this lawsuit should be dismissed with prejudice.

II.     Individual Capacity Claims Against Melvin Brisolara and Official Capacity Claims

According to Clark's testimony, Brisolara is sued because he is the supervisor of the individual officers listed in the complaint. [77-1, pp. 57-8.] Clark stated that Brisolara had no personal involvement with the incident at issue in this lawsuit. (*Id*.) "Personal involvement is a prerequisite to individual liability under section 1983." *Metro Charities, Inc. v. Moore*, 748 F. Supp. 1156, 1165 (S.D. Miss. 1990). Supervisory officials cannot be held liable for the actions of their subordinates on the basis of respondeat superior. *Thompkins v. Belt*, 828 F.2d 298, 303-4 (5th Cir. 1987); *Kohler v. Englade*, 470 F.3d 1104, 1114 (5th Cir. 2006).

In order to hold the sheriff liable under § 1983 there must be some connection between

his actions and the alleged constitutional violation. *Hinshaw v. Doffer,* 785 F.2d 1260, 1263 (5th Cir. 1986). Official liability will attach under § 1983 only if " 'execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' " *Collins v. City of Harker Heights*, 503 U.S. 115, 121 (1992) (quoting *Monell v. New York City Dep't of Social Servs.,* 435 U.S. 658, 694 (1978)). A sheriff not personally involved in the acts that deprived the plaintiff of his constitutional rights is liable under section 1983 if: 1) the sheriff failed to train or supervise the officers involved; 2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and 3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights. *Smith v. Brenoettsy,* 158 F.3d 908, 911–12 (5th Cir. 1998); *Thompson v. Upshur Cnty., TX*, 245 F.3d 447, 459 (5th Cir. 2001). The plaintiff must demonstrate at least a pattern of similar violations. *Snyder v. Trepagnier,* 142 F.3d 791, 798–9 (5th Cir. 1998), *cert. dismissed* 526 U.S. 1083 (1999). A single incident is usually insufficient to demonstrate deliberate indifference such that "[t]o succeed on his claim of failure to train or supervise" the plaintiff must demonstrate deliberate indifference, which usually requires a plaintiff to "demonstrate a *pattern of violations.*" *Cousin v. Small*, 325 F.3d 627, 637 (5th Cir. 2003), *cert. denied* 540 U.S. 826. Clark must present evidence for a reasonable fact finder to conclude that his injury, if any, resulted from an official policy or custom of the Sheriff's Office to survive summary judgment on his claim against Brisolara. *See Collins,* 503 U.S. at 120–1. In addition, Clark has failed to show that there was a direct causal link between a policy and the alleged violation. *See James v. Harris Cnty.,* 577 F.3d 612, 617 (5th Cir. 2009), *cert. denied* 558 U.S. 1114 (2010).

The uncontroverted summary judgment evidence in this case is that Brisolara was not personally involved in the chase or apprehension of Clark on November 25, 2010. Clark stated

that Brisolara was not present when the dog bit him. [77-1, pp. 8-9.] Clark indicated he sued

Brisolara because he is responsible for the actions of the subordinate officers. (*Id.*)

A suit against any of these defendants in their official capacity is the same as a suit

against Harrison County. *See McMillian v. Monroe Cnty.,* 520 U.S. 781, 785 n.2 (1997). Because

merely employing an alleged tortfeasor does not create liability, the plaintiff must prove his

injury was inflicted pursuant to an "official policy" of the county. *Webster v. City of Houston*,

735 F.2d 838, 841 (5th Cir. 1984) (*en banc*). In order to recover from a governmental entity

based on an official policy or custom under § 1983, Clark must demonstrate the following: (1) an

official policy or custom of which (2) the policy maker can be charged with actual or constructive

knowledge and (3) a constitutional violation whose "moving force" is that policy or custom.

*Piotrowski v. City of Houston,* 237 F.3d 567, 579 (5th Cir. 2001), *cert. denied* 534 U.S. 820.

Clark's official capacity claims, although purportedly based on the existence of an

unconstitutional unofficial policy or custom, is based on the alleged use of excessive force by

subordinate police officers. Clark provides no evidence to support his claim that Brisolara failed

to supervise the officers sued in this case, or provided inadequate training to them, or had a

policy which led to a violation of Clark's constitutional rights. Defendants have provided the

Harrison County Sheriff's office policy on excessive force, which outlines that "[d]eputies only

use the amount of force reasonably necessary to protect life and enforce the law under the

guidelines established by this policy manual." [77-4, p. 6.] When the suspect is "actively

resistant," the deputy may utilize compliance techniques which include "all reasonable means to

cause the suspect to comply as soon as reasonably possible" and "deputies should not relax care

until the subject is fully secured." [77-4, p. 8.]

Clark offers no specific dates or other details of prior assaults by these officers or any

details that such practice of assault is condoned by the sheriff. In short, Clark has failed to present

11

evidence sufficient to overcome summary judgment on his individual or official capacity claims against Brisolara. The Court recommends that the Defendants' motion for summary judgment on these claims against Brisolara should be granted. *See Rios v. City of Del Rio,* 444 F.3d 417, 425 (5th Cir. 2006), *cert. denied* 549 U.S. 825.

III.   Qualified Immunity

The Defendants are sued in both their individual and official capacities and have raised the defense of qualified immunity. [1, p. 4; 78, pp. 1, 14.] The question of qualified immunity must be addressed as a threshold issue because this issue determines a defendant's immunity from suit, that is, the ability to avoid a trial altogether, rather than merely his immunity from damages. *Brewer v. Wilkinson,* 3 F.3d 816, 820 (5th Cir. 1993), *cert. denied,* 510 U.S. 1123 (1994); *see also Pearson v. Callahan,* 555 U.S. 223, 231–3 (2009). To determine whether qualified immunity applies, the Court must determine if the facts, viewed in the light most favorable to the plaintiff, show that the government official's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If there is no constitutional violation, there is no need to further inquire about qualified immunity. *Saucier*, 533 U.S. at 201.

If a violation of a right has been alleged, then it must be determined whether a defendant's conduct was objectively reasonable according to established law at the time of the incident. *Waltman v. Payne*, 535 F.3d 342, 346 (5th Cir. 2008). Even if the conduct violates a constitutional right, qualified immunity is applicable if the conduct was objectively reasonable. *Hare v. City of Corinth, Miss.,* 135 F.3d 320, 327 (5th Cir. 1998). The plaintiff is required to state specific facts in the complaint to overcome the qualified immunity defense. *See Morin v. Caire*, 77 F.3d 116, 121 (5th Cir. 1996).

According to the Defendants, Clark has not demonstrated a violation of clearly established law in his complaint. [78, p. 17.] The Defendants maintain that Miller's conduct in

handling the dog was objectively reasonable under the circumstances. (*Id.*) Clark also failed to provide evidence to establish that a taser was used during his apprehension. [78, pp. 9-10.]

Claims of the use of excessive force during the course of an arrest implicate both the Fourth and Fourteenth Amendments and are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor,* 490 U.S. 386, 395 (1989); *Harper v. Harris Cnty.,* 21 F.3d 597, 600 (5th Cir. 1994), *reh'g denied* 29 F.3d 626. An excessive force claim is established when a plaintiff demonstrates that he was seized and sustained an injury, which resulted directly and only from a use of force that was clearly excessive to the need, and the use of such force was objectively unreasonable. *Flores v. City of Palacios,* 381 F.3d 391, 396 (5th Cir. 2004); *Graham,* 490 U.S. at 396-7.

"Reasonableness" is measured by considering whether the officers' actions were objectively reasonable in light of the facts and circumstances they confronted at the time of the incident at issue, without regard to their underlying intent or motive. *Graham*, 490 U.S. at 397. "In evaluating excessive force claims, courts may [also] look to the seriousness of injury to determine 'whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction as is tantamount to a knowing willingness that it occur.' " *Deville v. Marcantel,* 567 F.3d 156, 168–9 (5th Cir. 2009), *cert. denied* 559 U.S. 1048 (2010).

The practice of a police department authorizing its officers to use trained police dogs to find, seize and hold suspects, by biting if necessary, has been upheld by the courts. *Goldston v. Stansell*, 129 F.3d 609 (5th Cir. 1997); *see Kerr v. City of West Palm Beach,* 875 F.2d 1546 (11th Cir. 1989); *Chew v. Gates,* 744 F. Supp. 952 (C.D. Cal. 1990). The Sixth Circuit addressed a similar situation to the facts in this case where a suspect had been injured by a police dog after officers deployed a canine to look for the suspect after he had been spotted driving recklessly and

at fast speeds. *Matthews v. Jones,* 35 F.3d 1046 (6th Cir. 1994). The plaintiff in that case fled

when the police tried to stop the car he was driving, eventually fleeing on foot into a wooded

area. *Matthews*, 35 F.3d at 1048. At that point, the officers did not know the extent of the crimes

the plaintiff may have committed or whether he was armed. *Id.* After a failed attempt to locate the

plaintiff, the officers deployed the canine unit to track the suspect, during which the handler kept

the dog on a leash. *Id.* When the dog reacted as though the plaintiff was nearby, the handler twice

ordered the plaintiff to surrender and warned that the dog would be released if he failed to

comply. Receiving no response, the handler then released the dog from the leash. *Id.* The dog ran

about fifty feet into the woods, stopped and alerted. When the officer approached, he saw the

plaintiff lying on his stomach in the weeds, with his hands underneath his body. *Id.* The officer

ordered the plaintiff not to move and told him that if he remained still, the dog would be ordered

down. Instead of complying, the plaintiff quickly rose to his knees, prompting the dog to bite him

on the arm. The plaintiff then struggled with the dog, and the dog repositioned his bite. At that

point, the officer ordered the dog to release, and he took the plaintiff into custody. *Id.*

Based on those facts, the Sixth Circuit held that the plaintiff could not state a claim under

§ 1983 for the use of deadly or excessive force. *Id.* at 1050. Although the officers did not know

the extent of the plaintiff's crimes prior to releasing the dog, the plaintiff's "extreme behavior

provided cause for the officers to believe that he was involved in activity considerably more

nefarious than mere traffic violations," and "a reasonable police officer under these

circumstances would have believed that [the plaintiff] posed a threat to the officers' safety as well

as the safety of others." *Id.* at 1051.The court found no evidence that "could support a claim that

[the dog] was not used in an 'appropriate manner.' " *Id.*

Clark suffered an injury to his left and right ankle, and left arm, had abrasions to his flank

and abdomen, and had blood around his lips when he was examined at Memorial Hospital on

November 25. [90, p. 2.] Medical records from Memorial Hospital and the jail, which Clark does not contravene, show that he suffered two small puncture wounds to his left calf which were treated with routine wound care and an antibiotic. According to the nurse who treated Clark at the jail, the dog bites were "superficial." [82-3, p. 1.] He also received a CT scan of his brain and C-spine, due to the motor vehicle accident. [82-3; 82-4; 90, pp. 3-4.]

Clark's lacerations, bumps and bruises occurred when he resisted and tried to fight with Miller's police dog, after the dog found Clark in the woods. Clark's injuries, as described by him and his witnesses and depicted in the medical records are consistent with dog bites suffered in a struggle that occurred in the underbrush involving a man who had consumed a bottle of whiskey and taken Klonopin, and not with a purported taser attack allegedly administered by law enforcement officers. None of the officers at the scene deployed a taser on Clark, and the neither medical records from Memorial Hospital or the jail show evidence of taser injuries on Clark, other than the subjective complaint of a taser injury provided by Clark several days after the incident at issue in this lawsuit. The dog performed as trained and Miller did not remove the dog from the leash or otherwise provoke the dog to attack Clark. Miller's actions were reasonable under the circumstances involving a fleeing suspect.

Clark failed to prove a violation of a constitutional right. Each of the defendants acted in an objectively reasonable manner under the circumstances and there is no evidence that any defendant acted with deliberate indifference to a known risk of serious harm. A reasonable officer could have believed that the use of the police dog was justified when Clark fled into the woods after crashing a vehicle which was observed driving erratically and nearly crashing into other vehicles on the interstate. *See Ballard*, 408 F.App'x at 845; *Johnson v. Scott*, 576 F.3d 658, 660-1 (7th Cir. 2009). As discussed above, Clark has presented no issue of fact that these Defendants violated any of Clark's constitutional rights in the circumstances advanced in this complaint. In

addition, Clark has failed to show that an official county policy, practice, or custom led to a violation of his constitutional rights. *See Piotrowski,* 237 F.3d at 579. The Court recommends that the Defendants are entitled to qualified immunity in this case, and that the motion for summary judgment should be granted against all defendants, whether sued in their individual or official capacities.

IV.    <u>State Law Claims</u>

The MTCA provides the exclusive remedy for tort actions brought against a governmental entity or its employees for acts or omissions which give rise to suit. *Watts v. Tang,* 828 So.2d 785, 791 (Miss. 2002). The MTCA further provides that "a governmental entity and its employees acting within the course and scope of their employment duties shall not be liable for any claim . . ." [a]rising out of any act or omission of an employee of a governmental entity engaged in the performance or execution of duties or activities related to police or fire protection unless the employee acted in reckless disregard of the safety and well being of any persons not engaged in criminal activity at the time of injury. MISS. CODE ANN. § 11-46-9(1)(c). The police exemption of the MTCA is designed to protect law enforcement personnel from lawsuits arising out of the performance of their duties with respect to the victim. *Miss. Dept. of Public Safety v. Durn,* 861 So.2d 990, 997 (Miss. 2003). Government entities may be held liable only if the complained of conduct amounts to recklessness. *Craddock v. Hicks,* 314 F. Supp.2d 648, 654 (N.D. Miss. 2003); *Maldanado v. Kelly,* 768 So.2d 906, 909 (Miss. 2000). While the statute does not provide a definition, the Mississippi Supreme Court describes recklessness as where an "actor has intentionally done an act of unreasonable character in reckless disregard to the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." *Maldanado,* 768 So.2d at 910. Clark presents no evidence meeting this standard and the Court recommends that any claims advanced under state

16

law against these defendants should be dismissed.

V.     Motion to Strike

The Defendants assert that Clark is attempting to file a sur-rebuttal to the rebuttal filed by the defendants in this case. [85, p. 1.] The Court has recommended that this case be dismissed on summary judgment, thereby rendering the motion to strike moot. Consequently, the Court recommends that the motion to strike be denied as moot.

Conclusion

For the reasons set forth above, this Court recommends that the Defendants' motion for summary judgment [77] on all claims advanced by Clark against these Defendants in their individual and official capacities under § 1983 should be granted and this case should be dismissed with prejudice. The Court further recommends that the Defendants' motion to strike [85] should be denied.

In accordance with the Rules of this Court, any party, within fourteen days after being served a copy of this recommendation, or by no later than April 28, 2014, may serve and file written objections to the recommendations, with a copy to the District Judge, the U.S. Magistrate Judge, and the opposing party. The District Judge at that time may accept, reject or modify in whole or in part, the recommendation of the Magistrate Judge, or may receive further evidence or recommit the matter to this Court with instructions. Failure to timely file written objections to proposed findings, conclusions, and recommendations contained in this report will bar an aggrieved party, except on the grounds of plain error, from attacking on appeal unobjected to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1428–9 (5th Cir. 1996) (*en banc*), *superceded by statute on other grounds,* 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days). A copy of this R&R has been mailed to Clark by certified mail, return receipt

17

requested, at his last known address.

     This the 14th day of April, 2014.


                                     s/ John M. Roper, Sr.
                                     CHIEF UNITED STATES MAGISTRATE JUDGE