IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JOSEPH BRADLEY CLARK**                                               **PLAINTIFF**

v.                                           **CAUSE NO. 1:12CV216-LG-JMR**

**SERGEANT RAY MILLER, SERGEANT
JOHN MASSENGILL, DEPUTY JUSTIN
BRANNING, KENNETH MORAN, and
SHERIFF MELVIN BRISOLARA**                                   **DEFENDANTS**

## ORDER ADOPTING REPORT AND RECOMMENDATION

**BEFORE THE COURT** is the Report and Recommendation [92] entered by Chief United States Magistrate Judge John M. Roper, Sr.  Judge Roper recommends that the defendants' Motion for Summary Judgment [77] should be granted, and the defendants' Motion to Strike Clark's Surrebuttal [85] should be denied.  Joseph Bradley Clark filed an Objection [94] to the Report and Recommendation on April 25, 2014.  After reviewing the submissions of the parties and the applicable law, the Court finds that the Report and Recommendation should be adopted as the opinion of this Court.

### FACTS

On November 25, 2010, Sergeant John Massengill of the Harrison County Sheriff's Department witnessed a Chevrolet Blazer being driven erratically on Interstate 10 near Canal Road in Gulfport, Mississippi.  (Defs.' Mot., Ex. B, ECF No. 77-2).  The vehicle left the roadway five times before crossing the middle lane and nearly sideswiping a vehicle.  (*Id.*)  Massengill pulled the vehicle over, but the vehicle sped away as Massengill approached the vehicle on foot.  (*Id.*)  The vehicle

exited Interstate 10 at Beatline Road and almost struck two other vehicles. (*Id.*) A high speed chase continued until the vehicle turned west on a private driveway on Golden Pond Road and struck a tree. (*Id.*) Massengill has testified that he saw a man exit the vehicle and run north on foot. (*Id.*) The driver of the vehicle was later identified as Joseph Bradley Clark. (*Id.*)

Sergeant Ray Miller arrived on the scene, and he began to track Clark using a canine named D'Ablo. (*Id.*) D'Ablo was on a fifteen foot leash. (Defs.' Mot., Ex. D, ECF No. 77-4). Miller described the search area as dark with heavy brush. (*Id.*) D'Ablo located Clark and "engaged [Clark's] left lower arm before [Miller] saw [Clark's] location." (*Id.*) Miller has testified that he was the only officer in the vicinity, and he was "unable to physically release the leash." (*Id.*) Miller claims that Clark resisted and pulled away from D'Ablo, which caused D'Ablo to "engage" Clark's lower right leg. (*Id.*) Miller ordered Clark to stop resisting, and he released D'Ablo's grip. (*Id.*) Deputy Justin Branning, who had approached the scene after Clark was apprehended by Miller and D'Ablo, handcuffed Clark, and transported him back to the scene of the accident. (Defs.' Mot., Ex. E, ECF No. 77-5). It was then verified that the vehicle driven by Miller had been reported stolen by the City of Biloxi, and Clark had outstanding warrants in the City of Pascagoula. (*Id.*) Banning next transported Clark to Memorial Hospital, for treatment of the dog bites.

Clark, a pro se prisoner, filed this lawsuit against Sergeant Miller, Deputy

Branning, Sergeant Massengill, Kenneth Moran, and Sheriff Brisolara. In his Complaint, he states, "I was on the ground asleep" when "Miller made his dog bite me in the face and on my left arm and right leg. And then Sergeant Ray Miller and Sergeant John Massengill tassed [sic] me three times untill [sic] I was unconscious." (Compl. at 4, ECF No. 1). In an affidavit, Clark stated:

> 3. And when the dog bit me in the face I awoke. And I saw the dog, and two men. Ray Miller and Justin Branning.
> 4. And then Ray Miller said something to the dog and whiped [sic] the dog[']s leash.
> 5. And the dog grabed [sic] my left arm. And I said dam [sic] boy. And put my hand on the dog[']s head and he let go of my arm.
> 6. Then Ray Miller whiped [sic] the dog[']s leash again. And the dog bit my right leg. Chewing and biting me untill [sic] Ray Miller told him to stop.
> 7. And in the same instance the dog let go, they both, Ray Miller and Justin Branning poped [sic] me with their tasers.
> 8. And they tased me untill [sic] I fell unconscious to the ground causing damage to my artificial hip . . . .
> 9. And cracked my allready [sic] bad right elbow. Which [sic] needs surgery now. And hurt my allready [sic] bad back.
> 10. Ray Miller, Justin Branning, and John Massengill all said in their affidavits that they did not tase me. But they did.

(Clark Affidavit, ECF No. 81). Clark claims that a December 2, 2010, medical record proves that he was struck by a "taser," because it states in the area designated for subjective complaints that Clark was there for follow-up on dog bites to his right lower leg and his left lower arm and taser bruising on his abdomen. (Clark Affidavit, Ex. A, ECF No. 81-1). The objective findings included on the record appear to mention bruising to the abdomen but do not specify that the bruising was inflicted by a "taser." (*Id.*) The assessment merely stated, "dog bite wound." (*Id.*)

-3-

Clark's alleged hip injury and elbow injury were not mentioned in any of the medical records provided to the Court. (*See id*; *see also* Defs.' Mot., Ex. F, ECF No. 77-6; Defs.' Mot., Ex. I, ECF No. 90). In addition, none of the other records mention a "taser" injury." (*See id*.)

The Memorial Hospital emergency department nursing record dated November 25, 2010, states that Clark was involved in a motor vehicle collision in which he struck a tree at an unknown rate of speed. (Defs.' Mot., Ex. I, ECF No. 90). The record also notes that Clark ran from the vehicle and suffered dog bites. (*Id*.) The medical record dated November 26, 2010, lists the following subjective complaints: "I don't remember what happen [sic]. All I knew is that I was bitten by a dog. I haven't had a seizure in 20+ years." (Defs.'s Mot., Ex. F, ECF No. 77-6). Clark's subjective complaints for November 27, 2010, were: "Dog bites/scratches." (*Id*.) That same record describes the dog bites as superficial in the objective findings. (*Id*.) The assessment was "multiple dog bite abrasions." (*Id*.)

At his deposition, Clark could not say how many officers were with the canine in the woods, because he said everything happened too quickly. (Defs.' Mot. Ex. A at 55, ECF No. 77-1). He testified that there had to be more than one officer present, because a "taser" only holds two rounds. (*Id*.) He testified that he knew Miller was present, but he could not say what other officers may have been there. (*Id*. at 56). He said that he was suing the other officers because they had to be present. (*Id*.) He thinks they probably had some involvement with the incident, or,

if not, they know who did. (*Id.* at 57). He admits that Sheriff Brisolara was not present. (*Id.*) He sued Sheriff Brisolara, "because he's responsible for what his officers do." (*Id.*)

Massengill testified that he never entered the woods to search for Clark, and he never deployed a "taser"[1] on Clark. (Defs.' Mot., Ex. B, ECF No. 77-2). Miller testified, "At no time was a taser deployed against [Clark]." (Defs.' Mot., Ex. D, ECF No. 77-4). Branning testified, "At no time did I deploy a taser on [Clark] or witness any taser deployed during the apprehension and arrest of [Clark]." (Defs.' Mot., Ex. E, ECF No. 77-5). Sheriff Melvin Brisolara testified that he had no communication, interaction, or contact with Clark, and he was not present at the time of the apprehension or arrest of Clark. (Defs.' Mot., Ex. H, ECF No. 77-8). It is unclear whether Moran was present when Clark was arrested. Clark admitted in response to requests for admission that he has no evidence against Moran and that he does not know if he had contact with Moran or not. (Defs.' Mot., Ex. C, ECF No. 88). Clark also clarified in his responses that he made a mistake when he said that Massengill deployed a "taser." (*Id.*)

## DISCUSSION

In his Report and Recommendation, Judge Roper found that Clark's claims against Branning, Massengill, and Moran should be dismissed with prejudice, because there is no evidence that these officers were responsible for any of the

---

[1] A "taser" is an electroshock weapon manufactured by Taser International.

constitutional violations alleged by Clark. This finding was based on Clark's admissions in his deposition and responses to requests for admissions that he did not know which officers were present with Miller in the woods when the canine bit Clark.

In addition, Judge Roper determined that Clark's claims against Sheriff Brisolara should be dismissed with prejudice, since there is no evidence that Brisolara failed to properly train or supervise his subordinate officers and there is no evidence of a policy permitting excessive force. Furthermore, it is undisputed that Sheriff Brisolara had no personal involvement in the events at issue.

Judge Roper also found that Miller, Moran, Massengill, and Branning are entitled to qualified immunity. The injuries claimed by Clark were caused by the motor vehicle accident, his decision to run from the officers, and his actions in resisting the canine. Judge Roper determined that there was no evidence to support Clark's claim that a "taser" was deployed. Judge Roper, stated, "Miller's actions were reasonable under the circumstances involving a fleeing suspect." (Report & Recommendation at 15, ECF No. 92). He found that the individual defendants acted in an objectively reasonable manner, and Clark's constitutional rights were not violated. Judge Roper determined that Clark's state law claims should be dismissed, because the officers did not act with reckless disregard for Clark's safety. *See* Miss. Code Ann. § 11-46-9(1)(c).

In his Objection, Clark argues the December 2, 2010 medical record that mentions subjective complaints of "taser" bruising to abdomen creates a genuine

issue of material fact regarding whether the officers deployed "tasers" during the apprehension. He claims this notation is a medical diagnosis by a nurse practitioner. Furthermore, Clark claims that the nurse practitioner noted the existence of drainage and erythema related to the dog bites.

Clark has misinterpreted the medical record. The alleged "taser" bruising was listed as subjective. In other words, the record merely reflects that Clark told the nurse practitioner it was "taser" bruising. She did not opine that any of his injuries were inflicted by a "taser" in her objective findings or assessment. As a result, there is no evidence of a medical diagnosis of "taser" bruising, as Clark claims. Furthermore, it should be noted that the term "erythema" means redness, and the nurse practitioner actually stated that there was "Ø drainage," which means there was no drainage from the bite wounds.

Clark also now claims that he suffered a hernia as a result of the "taser," in addition to the alleged damage to his artificial hip and injury to his elbow. However, as explained previously, none of Clark's medical records indicate that he suffered any injuries to his hip or elbow. There are also no medical records indicating he suffered a hernia.

Clark admits that he cannot prove his claims against Sheriff Brisolara, but he attributes this to the defendants' alleged failure to comply with his discovery requests and the denial of his motion to compel. Judge Roper properly held that Clark's discovery requests were improper and irrelevant.

Furthermore, Clark calls the Court's attention to photographs of the dog

bites.  He states, "These wounds come form [sic] more than a dog holding someone.  The dog was made [to] eat me up just for sport.  I was no longer in a car, or no longer trying to flee on foot."  (Clark Objection at 2).  Clark notes that he was just an old, disabled man lying on the ground with a large tumor on his eye at the time of his arrest, so the force used to apprehend him was unreasonable and unnecessary.

     The Court has reviewed the photographs produced by Clark.  They depict small puncture wounds that at least one nurse described as superficial.  None of the medical records reflect that sutures or stitches were required to treat the wounds.  Clark's photographs of the eye tumor were apparently taken long after the events at issue, because the medical record generated only two days after Clark's arrest described the growth as a "pin sized red spot to sclera of right eye."  (Defs.' Ex. F, ECF No. 77-6).  The photograph of Clark's abdomen, where he was reportedly struck by "tasers," depicts only redness and a large scratch.  Furthermore, Clark was only fifty-one years old at the time of his arrest, and his age and physical condition did not prevent him from jumping out of a vehicle and running through the woods with officers in pursuit.

     Judge Roper properly found that the defendants did not use excessive force.  The record demonstrates that Clark was apprehended by a leashed canine after leading law enforcement on a high speed chase in a stolen vehicle with multiple warrants for his arrest outstanding.  While Clark often claims that he was lying down at the time he was apprehended, at times he admits that he stood up after the

dog bit him. This resistance resulted in the additional dog bites he suffered. Furthermore, Clark's testimony that the defendants repeatedly deployed "tasers" until he lost unconsciousness, resulting in a cracked elbow, an injured back, a hernia, and a damaged hip replacement is wholly unsupported by the record in this matter. Therefore, his self-serving testimony is insufficient to create a genuine issue of material fact. *See Ray v. Geo Group, Inc.*, No. 13-60239, 547 F. App'x 443, 445 (5th Cir. Nov. 1, 2013) ("[I]t is well settled that a 'self-serving affidavit, without more evidence will not defeat summary judgment.'"); *see also Johnson v. Diversicare Afton Oaks, LLC*, 597 F.3d 673, 676 (5th Cir. 2010) (holding that self-serving, conclusory deposition testimony that conflicted with the record was insufficient to create a genuine issue of material fact).

## CONCLUSION

For the foregoing reasons, Judge Roper's Report and Recommendation is adopted as the opinion of this Court. The defendants' Motion for Summary Judgment is granted, and their Motion to Strike Clark's Surrebuttal is moot.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Report and Recommendation [92] entered by Chief United States Magistrate Judge John M. Roper, Sr., is **ADOPTED** as the opinion of this Court.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the defendants' Motion for Summary Judgment [77] is **GRANTED**. Clark's lawsuit is hereby **DISMISSED WITH PREJUDICE.**

**IT IS, FURTHER, ORDERED AND ADJUDGED** that the defendants'

Motion to Strike [85] is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 23rd day of May, 2014.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE