IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**JOSEPH BRADLEY CLARK**                                              **PLAINTIFF**

**V.**                                      **CAUSE NO. 1:12-cv-216-LG-RHW**

**JUSTIN BRANNING**                                                  **DEFENDANT**

**FINDINGS OF FACT AND CONCLUSIONS OF LAW UPON ISSUES TRIED WITHOUT A JURY PRESENT PURSUANT TO FED. R. CIV. P. 52**

THIS CAUSE came before the Court on November 7, 2016, for trial without a jury. Pro se plaintiff Joseph Bradley Clark sued Justin Branning under 42 U.S.C. § 1983 for alleged constitutional violations. The sole issue at trial was Clark's claim that he was subjected to the use of excessive force during his arrest. Specifically, Clark alleged that during his arrest he was shot by Branning with a Taser[1] after he had been subdued. After careful consideration of the evidence presented at trial, the Court finds that Clark failed to prove his claims of excessive force by a preponderance of the evidence. Accordingly, judgment will be entered in favor of Branning.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Clark was arrested on November 25, 2010 in Long Beach, Mississippi, for various traffic violations and DUI following a vehicle pursuit. During the pursuit, Clark crashed his vehicle into a tree and fled on foot into a wooded area. Ray Miller,

---

[1]A Taser or Taser gun is a device that fires electrified darts to stun and immobilize a person.

1

the head of the K9 unit of the Harrison County Sheriff's Department and the K9 dog handler that night pursued Clark. Minutes later, Miller found Clark sleeping under a tree. Branning testified that when he arrived at the scene he merely placed Clark in handcuffs without any use of force or further incident. However, Clark maintains that Branning shot him with a Taser after he had been immobilized by the dog and subdued by the K9 officer. (Trial Tr. at 99:7-11),

In order for Clark to prevail on his excessive force claim he must show (1) an injury (2) which resulted from the use of force that was clearly excessive to the need and (3) the excessiveness of which was objectively unreasonable. *Ramirez v. Martinez,* 716 F.3d 369, 377 (5th Cir. 2013). It is also well settled that a gratuitous use of force on a suspect that has already been subdued violates the Fourth Amendment. Indeed, courts have frequently found constitutional violations in cases where a restrained or subdued person is subjected to the use of force. *Kitchen v. Dallas Cty., Tex.*, 759 F.3d 468, 479 (5th Cir. 2014). *See also Giles v. Kearney,* 571 F.3d 318, 326 (3d Cir. 2009) (an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued.); *Skrtich v. Thornton,* 280 F.3d 1295, 1303 (11th Cir. 2002) (government officials may not use gratuitous force against a prisoner who has been already subdued or, as in this case, incapacitated.); *Kijowski v. City of Niles*, 372 F.App'x. 595, 599-600 (6th Cir. 2010) (deploying Taser on suspect who was not resisting is objectively unreasonable); *Landis v. Baker*, 297 F.App'x. 453, 463 (6th Cir. 2008) (gratuitous or excessive use of a Taser violates a clearly established constitutional right).

In a bench trial, the judge serves as the finder of fact. As such, it is for the court to assess and weigh the credibility of witness testimony. *United States v. Allen*, 587 F.3d 246, 257 (5th Cir. 2009) (witness credibility and the weight of the evidence is the exclusive province of the fact-finder). Clark's case fails in large part due to his lack of credibility and the absence of any evidence tending to corroborate his account of the incident. For example, Clark's claim regarding who tased him has changed several times throughout these proceedings. First, Clark named Massengill and Miller in the original complaint. At the omnibus hearing before the magistrate judge Clark said "I'm not sure who tased me." Finally, Clark named Branning as his assailant although he could not identify him in the courtroom.[2]

Clark did not report that he was tased on the day of the arrest and never mentioned that he was tased until much later.[3] Clark likewise had several medical visits at the detention facility before he ever mentioned any use of a Taser. Clark testified to knots or bruises that appeared several days after the incident.

---

[2]Ms. Broom: "You don't know Justin Branning was in the woods when you opened your eyes either, do you?"
Mr. Clark: "Well, it was definitely a Harrison County police officer."
Ms. Broom: "But you can't say with a hundred percent certainty that it was Officer Branning, can you?"
Mr. Clark: "There wasn't nobody else around. I mean it had to be."
Ms. Broom: But you can't say with a hundred percent certainty that it was Justin Branning that you're alleging used a taser, can you?"
Mr. Clark: No, I can't." (Trial Tr. at 33:17-25).

[3]John Massengill, the patrol sergeant and shift commander at the time of the arrest, stated, "A taser was never mentioned to me by anybody during this whole incident, including Mr. Clark." (Trial Tr. 83:14-15). Likewise, when the Court asked Chad Sablich, the patrol captain for the Harrison County Sheriff's Office, whether Clark ever indicated that a taser was used he replied, "No, sir... I would think he would have said something to that fact if he felt he was treated wrong." (Trial Tr. at 71:17-20).

3

According to the officer witnesses, such bruising is inconsistent with marks left by the prongs of a fired Taser.[4] Additionally, Nancy Bladsacker, the nurse practitioner on call at the detention center who treated Clark the day of his arrest, testified that she did not observe any signs of injury or that a Taser was used. (Trial Tr. at 17:2-6, 82:23).

Clark testified he was about eight feet from Officer Branning when he was shot with the Taser.[5] However, at trial Branning demonstrated how a Taser works by firing a Taser into a cardboard box from approximately eight feet away. The demonstration showed that at that distance, the two fired prongs would hit the target about "13 and a half [inches]" apart. (Trial Tr. at 115:20). After the demonstration, Clark changed his testimony: "they was closer than – to me than – to me than that. They was right up on me." (Trail Tr. at 115:25-116:1).

Finally, Clark's recollection of the occurrences during the night in question must be considered against the backdrop of his apparent state of severe intoxication. According to Clark, he had earlier consumed a fifth of whiskey and an

---

[4]Massengill testified that he had never seen bruising as a Taser wound. (Trail Tr. at 83:20-21, 84:15-16). Branning, who has himself been tased twice and used his Taser twice, testified that when he was tased the first time he had "small redness and the puncture wound, but other than that, there was nothing else" and the second time "had burn marks for weeks and the puncture holes from the prongs." (*Id*. at 106:8-13). Branning testified, "I've never had the bruising on the times that I physically took the prongs. And from the one subject that I personally tased, he had no bruising that I observed whatsoever. The other applications backing other officers up when they've done it, I've never seen anything." (*Id*. at 106:17-21).

[5]Clark testified, "Probably about, I don't know, probably about eight, seven, eight foot." (Trial Tr. at 31:5-6).

4

unknown quantity of klonopin.[6] In fact, the test results of the blood draw at the hospital showed a blood alcohol content of .185, more than twice the legal limit of .08. (Trial Tr. at 101:17).

In contrast to Clark's testimony, Branning testified that he never deployed or even displayed his Taser. Branning also testified that Ray Miller, the K9 unit handler, had a strict policy of not allowing Tasers to be used around his dogs. Branning went on to explain that using the Taser around the dog is voided because the Taser could inadvertently cause injury to the dog. (Trial Tr. at 99:23-100:6). Further, Branning said that it was both the training and practice to not use a Taser while a canine was present.(Trial Tr. at 100:7-9). Officer Sablich testified:

> And they normally don't deploy a Taser when there's a canine that is right there because they're worried about the canine getting wrapped up in the wires, which can actually result in tasing the canine, so.

(Trial Tr. at 73:15-18). Branning's testimony regarding the facts and circumstances of Clark's arrest and detention were essentially corroborated by the other arresting officers.

## CONCLUSION

The Court finds that there is no credible evidence that Officer Branning used a Taser or any other unnecessary or excessive force during Clark's arrest after Clark had been subdued by the K-9 officer. The Court finds that Clark has failed to prove his excessive force claim against Branning by a preponderance of the evidence.

---

[6]Klonopin (Clonazepam) is a controlled schedule IV benzodiazepine commonly abused for its sedative effects.

**IT IS THEREFORE ORDERED AND ADJUDGED** that Branning is entitled to a judgment in his favor. All of Clark's claims are dismissed with prejudice. The Court will enter a judgment accordingly pursuant to Federal Rule of Civil Procedure 58.

**SO ORDERED AND ADJUDGED** this the 30th day of November, 2016.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE
